**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Darwin Clark BAILEY, Defendant-
Appellant.**

No. 72-1799.

United States Court of Appeals,
Fifth Circuit.

June 13, 1973.

Coleman, Circuit Judge, concurred specially and filed opinion.

Goldberg, Circuit Judge, concurred in part and dissented in part and filed opinion in which John R. Brown, Chief Judge, Wisdom, Godbold, Ingraham and Roney, Circuit Judges, joined.

John B. Farese, Ashland, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLD-BERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

PER CURIAM:

The court convened en banc to consider the propriety of the *Allen*[1] charge. The facts of the case and the charge in question are set out in the panel opinion. United States v. Bailey, 5 Cir., 1972, 468 F.2d 652. We adhere to our decisions approving the *Allen* charge within the limitations therein delineated. See, e. g., United States v. Sutherland, 5 Cir., 1972, 463 F.2d 641, 647–648; United States v. Williams, 5 Cir., 1971, 447 F.2d 894, 898–900; Posey v. United States, 5 Cir., 1969, 416 F.2d 545, 551–552; Sanders v. United States, 5 Cir., 1969, 415 F.2d 621, 629–632; Thaggard v. United States, 5 Cir., 1965, 354 F.2d 735, 738–739. Cf. Green v. United States, 5 Cir., 1962, 309 F.2d 852, 854–856; Powell v. United States, 5 Cir., 1961, 297 F.2d 318, 319–322, for supplemental charges which went beyond the pale.

The judgment of conviction is affirmed.[2]

---

1. Allen v. United States, 1896, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528.

2. Appellant, a Mississippi highway patrolman, was charged with bank robbery. The evidence against him, *inter alia*, included an eye witness who saw appellant leaving the bank when the robbery alarm sounded, "bait money" in his possession, and his detailed confession.

   An example of the advocacy which is calculated to cause a deadlocked jury, thereby making some form of supplemental charge necessary is seen in this record. Notwithstanding an inquiry from the district court to the prospective jurors whether each of them would vote

not guilty unless convinced of guilt beyond a reasonable doubt, defense counsel, on voir dire, inquired as follows:

   "Now, please listen carefully to this because this is very important and vital to the defense of this case. If there is a single juror who is seated in this jury box who is not convinced beyond all reasonable doubt as to this man's guilt, they are not convinced that the Government has proven his guilt in the manner prescribed by law, if that doubt continues to exist in your mind and you should be the only one of those twelve jurors, and after reconsultation with your fellow jurors if you are still convinced that his guilt

COLEMAN, Circuit Judge (concurring specially):

For the reasons stated in my opinion in Thaggard v. United States, 5 Cir., 1965, 354 F.2d 735, 739, I would, if it were within my power, do away with the *Allen* charge. Since, however, the Supreme Court of the United States has approved it and after seventy six years has never seen fit to withdraw that approval I consider myself bound by the unchanged views of the High Court.

GOLDBERG, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and WISDOM, GODBOLD, INGRAHAM and RONEY, Circuit Judges, join (concurring in part and dissenting in part):

I concur in the *en banc* Court's affirmance of this conviction, but for the reasons stated in the panel opinion, 468 F.2d 652, I must respectfully dissent from the Court's refusal to prohibit further use of the "dynamite charge" in this Circuit. The instant conviction was obtained after the trial judge delivered an *Allen* charge that the original panel held was in compliance with all requirements heretofore laid down in this Circuit. The panel was nevertheless troubled by the use of the charge, and we expressed a desire to reverse the case. Being bound by precedent, however, we were compelled to affirm the conviction, as we can overrule prior Fifth Circuit cases only when we sit *en banc*. We have now considered the issue while sitting *en banc*, and the majority of the Court has refused to put an end to any further use of "this abusable relic." 468 F.2d at 669.

My view of the developing law, which has been greatly aided by the excellent briefs supplied by all parties to this appeal, convinces me that this Court should overrule our prior decisions allowing use of the *Allen* charge and thereby join the jurisdictions that have abolished this type of jury instruction. *E. g.,* United States v. Thomas, 1971, 146 U.S.App.D.C. 101, 449 F.2d 1177 (*en banc*); United States v. Fioravanti, 3 Cir. 1969, 412 F.2d 407, cert. denied sub nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88; United States v. Brown, 7 Cir. 1969, 411 F.2d 930, cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508. In so doing, I would adopt the persuasive words of Judge Aldisert, who speaking for the Third Circuit in United States v. Fioravanti, *supra,* wrote:

"After the most careful consideration of the Allen Charge and the context in which it was presented in this case, we have concluded that its use here was not so prejudicial as to deprive appellant of a fair trial and a unanimous verdict based on proof beyond a reasonable doubt.

"Our refusal to reverse this conviction should not be taken to mean that we have tacitly approved of the Charge or that we intend, in the future, to ponder each case on its peculiar facts. On the contrary, we know from the experience in this circuit and from an examination of the experience in others that the use of the Allen Charge is an invitation for perennial appellate review. As the Arizona Supreme Court said when it abolished it in 1959:

'When and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case. It

has not been proven beyond all reasonable doubt, do you tell me here and now under your solemn sworn oath as jurors that you will have the courage and the fortitude, if necessary, as long as you believe that, to stand alone and to face those other eleven jurors and continue to vote not guilty so long as you have that reasonable doubt in your mind? Do you tell me

that you have that courage and that fortitude? Will you nod your head each and every one? You tell me that you will not be swayed by the majority rule but as long as you have that reasonable doubt in your mind you can stand tall and straight and say, 'No, I am not convinced of his guilt and I will continue to vote not guilty if it takes staying here till doom's day'?"

has given, and we believe each use will give us, harassment and distress in the administration of justice. No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.

\*    \*    \*    \*    \*    \*

'We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court.' State v. Thomas, 86 Ariz. 161, 342 P.2d 197, 200 (1959).

"Hereafter, in this circuit, trial judges are not to give instructions either in the main body of the charge or in the form of a supplement that direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his. Such an instruction will be deemed error, normally reversible error. Conceivably, in very extraordinary circumstances the error may be found so inconsequential as to avoid the necessity of reversal on appeal. But hereafter this court will not let a verdict stand which may have been influenced in any way by an *Allen* Charge.

"We predicate our decision on the basis of the potential for prejudice its future use may generate and the profound difficulty in confining its use within just and equitable bounds. Its peccancy comes from its tendency to hurt, from its tendency to erode the jurors' capacity for meaningful group deliberation with its concomitant arguing, influencing, and exchange of views. As a prophylactic device to eliminate future vexation, our prohibition shall have prospective application only in those jury trials which shall be conducted hereafter.

"The judgment of conviction will be affirmed."

412 F.2d at 419–420 (footnotes omitted).

It is settled that use of the *Allen* charge does not *per se* offend the Constitution, but it is also clear that we have the supervisory power to end its use. Our custodial responsibility over the District Courts is not acquitted merely by the interpretation and application of relevant principles of existing law. As the stewards of justice in this Circuit, we are charged with an additional duty to establish and maintain civilized standards of procedure governing the conduct of trials. As the Ninth Circuit has recently pointed out, a springtide of authority bears witness to the irrefutable existence of this supervisory power:

". . . That this court has such supervisory power is hardly deniable. In La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the United States Supreme Court held that '. . . supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system.' *Id.* at 259–260, 77 S. Ct. 309. Moreover, this pronouncement by the Nation's supreme judicial authority has been reaffirmed by every Court of Appeals, including our own, that has confronted the issue. In a very recent opinion of this court, Guam v. Camacho, 470 F.2d 919 (9th Cir. 1972), Chief Judge Chambers acknowledged the existence of the 'supervisory power' of this court. *See also* United States v. Thomas, 146 U. S.App.D.C. 101, 449 F.2d 1177 (1971) (en banc); United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); In re Ellsberg, 446 F.2d 954 (1st Cir. 1971); United States v. Jones, 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), cert. denied 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971); Dellinger v. Mitchell, 143 U.S.App.D. C. 60, 442 F.2d 782 (1971); Ralph v. Warden, 438 F.2d 786 (4th Cir. 1970), cert. denied, 408 U.S. 942, 92 S.Ct. 2869, 33 L.Ed.2d 766 (1972); United States v. Butera, 420 F.2d 564 (1st Cir. 1970); United States v. Fioravanti, 412 F.2d 407 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L. Ed.2d 88 (1969); United States v.

Brown, 411 F.2d 930 (7th Cir. 1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc); United States v. Dooling, 406 F.2d 192 (2d Cir. 1969), cert. denied, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); Sanders v. Russell, 401 F.2d 241 (5th Cir. 1968); Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627, 637 (1968) (rehearing en banc); ACF Industries, Inc. v. Guinn, 384 F.2d 15 (5th Cir. 1967), cert. denied, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); Government of Virgin Islands v. Lovell, 378 F.2d 799 (3d Cir. 1967); Thomas v. United States, 368 F.2d 941 (5th Cir. 1966); Tate v. United States, 123 U.S.App.D.C. 261, 359 F.2d 245 (1966); United States v. Freeman, 357 F.2d 606 (2d Cir. 1966); Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965); United States v. Inman, 352 F.2d 954 (4th Cir. 1965); Ford v. United States, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965) (en banc); Smith v. Katzenbach, 122 U.S.App.D.C. 113, 351 F.2d 810 (1965); Natural Resources, Inc. v. Wineberg, 349 F.2d 685 (9th Cir. 1965), cert. denied, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966); Jones v. United States, 342 F.2d 863, 119 U.S.App.D.C. 284 (1964) (en banc); United States v. D'Angiolillo, 340 F.2d 453 (2d Cir.), cert. denied, 380 U.S. 955, 85 S.Ct. 1090, 13 L.Ed.2d 972 (1965); United States ex rel. Sturdivant v. New Jersey, 289 F.2d 846 (3d Cir.), cert. denied, 368 U.S. 864, 82 S.Ct. 109, 7 L.Ed.2d 61 (1961); Wildeblood v. United States, 106 U.S.App.D.C. 338, 273 F.2d 73 (1959) (Burger, J.); Delaney v. United States, 199 F.2d 107 (1st Cir. 1952); Helwig v. United States, 162 F.2d 837 (6th Cir. 1947)."

Burton v. United States, 9 Cir. 1973, 483 F.2d 1182 (footnotes omitted). *See also* Lego v. Twomey, 1972, 404 U.S. 477, 479 n.1, 92 S.Ct. 619, 30 L.Ed.2d 618. I believe we err in not exercising that supervisory jurisdiction in this instance, and I note in passing that in both *Fioravanti, supra,* and *Brown, supra,* the Supreme Court denied writs and let similar supervisory changes stand.

In the dual interests of promoting justice and eliminating an overly fertile source of appeals, I would have the *en banc* Court exercise its supervisory power and abolish the use of the *Allen* charge in all its many shades and phases. I would permit no criminal conviction to stand in any future federal trial in this Circuit that does not strictly comply with the Standards recommended by the American Bar Association:

"5.4 *Length of deliberations; deadlocked jury.*

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that juror have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not

require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

American Bar Association, Standards Relating to Trial by Jury § 5.4 (Approved Draft 1968).

I regret that the *en banc* Court declines to take this remedial and prophylactic action, yet I trust that many of the District Judges of this Circuit will on their own initiative discontinue using *Allen* and instead will adhere to the ABA Standards. The *Allen* charge ought not to be used, for as we discussed at length in the original panel opinion, the trouble it causes far outweighs any proper purpose it serves.